ESSEX BUTTON Co. *v.* PAUL *et al.*

(*Circuit Court, D. New Jersey.* December 1, 1891.)

1. PATENTS FOR INVENTIONS—PRIOR STATE OF ART—CUFF-BUTTONS.
   Letters patent No. 319,997, issued June 16, 1885, to George D. Paul and Cyrus E. Vreeland, covered an improvement in cuff-buttons, whereby they are provided with a separable shoe, "consisting of a spring-metal ring, formed with a flaring opening, *a*, through which the post or shank is passed, and with a yielding central portion, curved outwardly, forming a seat, *c*, in which the post or shank rests," and "adapted to be secured to the shank between its outer end and the fabric through which the shank is inserted." *Held* that, in view of the prior state of the art, and of the fact that broader claims were originally made and rejected, the patent must be restricted to the specific device described, and is not infringed by letters patent No. 382,342, issued May 8, 1888, to Egbert Alsdorf and George D. Paul.

2. SAME—ASSIGNMENT—ESTOPPEL.
   The fact that the inventor and patentee of an improvement in an article sells and assigns the patent to a third person does not, in the absence of misrepresentations as to the scope of the patent, estop him from obtaining a patent for another and different improvement thereon.

In Equity.   Suit by the Essex Button Company against George D. Paul and others for infringement of patent.   Bill dismissed.

*Alfred A. Van Hovenberg,* for complainant.

*E. L. Sherman,* for defendants.

Before ACHESON and GREEN, JJ.

ACHESON, J.   This suit is upon letters patent No. 319,997, dated June 16, 1885, granted to George D. Paul, the inventor, and to his assignee of one-half, Cyrus E. Vreeland, for an improvement in buttons; the invention consisting (the specification states) "in certain features of construction," the object being to provide a device adapted to be applied to a cuff-button, to prevent it from coming through the button-hole and becoming lost.   The patent has a single claim, which is as follows:

"A button, constructed with a rigid post or shank, having an enlarged flat end, and provided with a separable shoe, consisting of a spring-metal ring, formed with a flaring opening, *a*, through which the post or shank is passed, and with a yielding central portion, curved outwardly, forming a seat, *c*, in which the post or shank rests, the said shoe adapted to be secured to the shank between its outer end and the fabric through which the shank is inserted, substantially as set forth."

By virtue of assignments from Vreeland to one Van Hovenberg and from the latter and said Paul, the plaintiff, on January 17, 1885, became the sole owner of the said invention and the letters patent therefor.   Subsequently, upon the application of Cyrus E. Vreeland, the inventor, filed January 14, 1888, letters patent No. 382,342, dated May 8, 1888, were issued to Egbert Alsdorf and George D. Paul, as assignees of Vreeland, for improvements in button fasteners.   The alleged infringing buttons are made under and in accordance with this latter patent.   The bill of complaint proceeds upon the assumption that the Paul invention, for which the patent in suit was granted, consisted in "the formation and construction of a removable spring-back washer or shoe, with a central perforation of such a relative diameter as to be used in connection with

a button having a rigid post or shank, with an enlarged flat end, thereby admitting of the easy application of a button to any kind of goods, and admitting of its removal at pleasure." But so broad a scope must be denied to the patent by reason both of the prior state of the art and the proceedings in the patent-office. The evidence is conclusive that prior to the Paul invention buttons had been patented in the United States having all the general features just mentioned. In truth, Paul was a mere improver of an old and well-known type of buttons, his improvement introducing no new principle of operation, but consisting altogether of certain specific forms of construction. Moreover, the file-wrapper shows that his application as originally framed was for broader claims, which, being rejected, were replaced by the restricted claim finally allowed. It is manifest upon the face of this claim that it relates to mere features of peculiar construction, and the prior state of the art was such that the claim must receive a very narrow interpretation. Conceding that the patent may be sustained for the precise device described, yet the claim cannot be extended by construction so as to cover distinct devices having other forms, although designed for the same general purpose. Now, such is the character of the defendants' button fastener, which undoubtedly varies as much from the plaintiff's device as it did from earlier devices in the art. The position taken by the plaintiff, that the question of infringement is to be determined by the supposed construction which the second section of the answer puts upon the patent in suit, is quite untenable. Therefore we need not stop to consider whether or not the views of the plaintiff's expert based upon that theory are correct. The two devices are not colorably, but substantially, different. We need only specify one point of distinction, which is fundamental, namely, the defendants' device has no "yielding central portion, curved outwardly, forming a seat, *c*, in which the post or shank rests." There are other distinctive features. But it is not necessary to prolong the discussion. We are well satisfied that infringement has not been shown.

Nothing appears to create an estoppel as against any of the defendants. It is not shown that either Paul or Vreeland ever made any misrepresentation to the plaintiff as to the scope of the patent in suit, and certainly they were not precluded, by a simple assignment of the patent, from applying for and obtaining letters patent for another and different improvement, subsequently made, in the same class of button fasteners. Let a decree be drawn dismissing the bill, with costs.

GREEN, J., concurs.